IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 03-cv-02321-EWN-MJW

RAYMOND ARTHUR PRICE,

      Petitioner,

v.

SUPT. REID, et al.,

      Respondents.

---

## RECOMMENDATION ON APPLICATION FOR A WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2254 BY A PERSON IN STATE CUSTODY

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**


      This case is before this court pursuant to a General Order of Reference to United States Magistrate Judge (Including Dispositive Motions) issued by District Judge Edward W. Nottingham.  (Docket No. 25).

      Before the court is the pro se incarcerated petitioner's Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody (Docket Nos. 10 and 11).  In that Application, petitioner challenges a judgment of conviction entered in the District Court of Fremont County upon a jury verdict finding him guilty on April 3, 1990, of three counts of theft and three counts of criminal possession of a forged instrument for which he was sentenced to a total term of imprisonment of nine years in the custody of the Colorado Department of Corrections, to run consecutively to a life sentence that petitioner was serving in an unrelated case.

2

The Colorado Court of Appeals (hereinafter "CCA") affirmed on December 16, 1993, in

an unpublished opinion, and the Colorado Supreme Court denied the petitioner's

Petition for Writ of Certiorari on May 9, 1994.

Subsequently, the trial court apparently denied the petitioner's motion for post-

conviction relief pursuant to Colo. Crim. P. 35(c).  Petitioner appealed, and on June 23,

2003, the CCA issued a Show Cause Order in which the court stated in pertinent part:

> From a review of the notice of appeal, it appears that appellant did
> not provide this court with a copy of the judgment or order being
> appealed, including the date on which the judgment or order was entered
> as required by C.A.R. 3(g)(7).  In fact, it does not appear that the district
> court has entered a ruling on appellant's motion, and the Supreme Court
> DENIED the petition for writ on May 30, 2003.
>
> IT IS THEREFORE ORDERED that appellant shall show cause, if
> any there is, in writing within 21 days of the date of this order why the
> appeal should not be dismissed without prejudice for lack of a final
> appealable order.

(Docket No. 29-7).

Petitioner did not submit a copy of the judgment and instead responded with a

document which was replete with inappropriate language.  He stated in part in that

document:

> TO: Fuck-Face:
> 1st of all )( I'am [sic] now in San Carlos, for my PTSD/Vietnam (Black
> Ops), so, fuck off.  You "people" wouldn't know the <u>TRUTH</u>, if it hit you at
> 150 mph.
> 2nd/I don't have any of my legal paper work, here, get it Jack OFF.
>
> 3rd, I'm [sic] I going to [sic] fast for you Fuck Face, where did you learn
> English Fuck Face U, "If any there is"
>
> 4th I sent one motion/then another motion a week later, (in which I told you
> that) dumb fuck.  So, you have a copy of the judgment/order, dumb fuck,

you'd know that if their [sic] wasn't so many retards, working in the "court
system".  Stop by and visit me ? Anytime

So in closing:
Fuck you and your Mama! Bitch

(Docket No. 29-8).

Upon consideration of that response, on July 14, 2003, the CCA dismissed the
appeal and stated that it would "strike without consideration any further pleadings,
filings, responses, motions, or briefs that contain inappropriate language and
statements."  (Docket No. 29-9).

Petitioner then commenced this action in November 2003.  Petitioner was
directed to amend the petition after it was concluded that petitioner's "disorganized and
vague allegations fail to provide a short and plain statement of the state procedural
background of his case and fail to provide a short and plain statement of his claims
showing he is entitled to relief."  (Docket No. 9).  In addition, he was directed to
demonstrate that he had exhausted state remedies as to each claim.  (Docket No. 9).
Thereafter, the Application was denied and dismissed without prejudice by Senior
Judge Zita L. Weinshienk, who held that petitioner "submitted two similar but not
identical amended applications, each attacking the same conviction.  By submitting two
different amended applications, [petitioner] has failed to comply with the [Magistrate
Judge's] order within the time allowed."  (Docket No. 13). The Tenth Circuit Court of
Appeals, however, reversed the dismissal and remanded back to the District Court for
further proceedings.  (Docket No. 22).

Petitioner raises the following four claims for habeas corpus relief:

4

(1) The Colorado court system violates due process and equal protection due to their refusal to grant petitioner a hearing to produce evidence of innocence.  Petitioner claims that he subpoenaed "a Mr. Dan Boone, who worked for me.  He wouldv'e [sic] testified he took the checks for me, to them, co-signed, he was <u>not</u> allowed to testify for me by the trial court, or Colo. Court of Appeals/Colo. Supreme Court.  Hence denying me due process/equal protection.  Overturn conviction return to state court for hearing." (Docket No. 11 at 5).  In the margin next to this claim, petitioner also writes "Worthless Attorneys," "Denial, to present evidence of innocense," and "Colo. Court of Appeals/Colo Supreme Court upholds; Fremont Court, denies, due process equal protection."  (Docket No. 11 at 5).

(2) The trial court abused its discretion for granting the prosecution's challenge for cause to a prospective juror who had not evidenced any bias or enmity against the prosecution.

(3) Appellate counsel was ineffective by not preserving a constitutional issue on direct appeal, namely, that "there was a man named Dan Boone, the trial court wouldn't allow him to testify, which denied me due process/equal protection."  (Docket No. 11 at 6).

(4) There was insufficient evidence to show theft "since [the petitioner] was the co-owner of the checks.  Moreover, there was a witness (Dan Boone) who was subpoened [sic] (but not allowed to testify) to show he took the checks and had them co-signed, so there was insufficient evidence to show intent or any knowlege [sic] they were forged/counterfit [sic].  There needs evidence brought before the court to show

innocense." (Docket No. 11 at 6).

The respondents timely filed an Answer (Docket No. 29), and the petitioner filed

a Reply (Docket No. 30). The court now being fully informed makes the following

findings, conclusions of law, and recommendation.

Respondents have provided the following statement of facts:

Price was involved in an automobile accident on January 16, 1988
. . . . He was a passenger in a car that was owned and insured by Russell
Estridge . . . . As a result of the accident, State Farm Insurance (Mr.
Estridge's insurer) paid for Price's medical expenses incurred during this
accident . . . .

Three different medical providers billed State Farm for medical
services provided to Price; St. Joseph Hospital, Magnetic Resonance
Imaging of Colorado ("MRI"), and Dr. William Ottersberg . . . . Upon
receipt of the bills, State Farm issued three checks payable jointly to Price
and the medical provider . . . . Price signed three assignment of benefit
documents authorizing State Farm to pay the benefits directly to the three
respective medical providers . . . .

Rosemary Scherf, collection manager for MRI, testified that Price
had several tests performed on him that totaled $855 in costs . . . . Price
signed a form authorizing the payment, but MRI never received it . . . .
The check from State Farm to Price and MRI was deposited into Price's
account. It appeared to have been endorsed by Price, MRI, and a Bruce
Peters . . . .

Ms. Schert testified that checks endorsed by MRI were always
endorsed by stamp with MRI's tax ID number and other information . . . .
Ms. Scherf testified unequivocally that the endorsement of MRI on the
check to Price from State Farm was not an authorized endorsement from
MRI . . . . She also testified that while Bruce Peters is a doctor associated
with MRI, he would not normally endorse a check of this nature for MRI,
and that he did not in this case . . . .

Scot Paulsen, employee of St. Joseph's Hospital in collections,
testified that the medical services Price received there amounted to
$2,183.96 . . . . Paulsen contacted Price when she learned that the
account was delinquent, and that a check from State Farm had been

6

deposited, but that the hospital had not received payment . . . .  The check from State Farm was endorsed by Price, and a signature "Clyde Belman, Account Rep." appeared on the back of the check . . . .  Price stated over the telephone to Ms. Paulsen that his friend, Mr. Boone, had the check endorsed at the hospital for him, and that he did not personally know who Clyde Belman was . . . .  An account administrator testified that the endorsement on the back of the check was unauthorized and that there was no one by the name "Clyde Belman" employed at the hospital . . . .  Price stated that he would bring Mr. Boone in to straighten out the billing, but he never appeared at the hospital . . . .

Dr. Ottersberg testified that Price owed him $548 for medical services . . . .  Dr. Ottersberg informed State Farm that he had not received pay ment, and State Farm informed him that they had issued a check that had been endorsed and cashed . . . .  When Dr. Ottersberg received a copy of the cashed check, he saw it had been endorsed by Price, and that Dr. Ottersberg's name appeared on the check but it was not his signature . . . .

A bank teller at Fremont National Bank, Cheryl Barr, testified that she had waited on Price when he deposited the check made out to himself and St. Joseph's . . . .  On June 22, 1989, the deposit slip showed that Price deposited $2,183.96.  Two additional deposit slips demonstrated deposits by Price for $548 and $855 . . . .  A bank official testified that Price's signature on those two checks matched Price's signature card on file with the bank . . . .

(Docket No. 29 at 5-8) (citations omitted).

## EXHAUSTION AND PROCEDURAL DEFAULT

Respondents assert that the petitioner has failed to exhaust his state remedies

and has procedurally defaulted his unexhausted claims.  Section 2254 of Title 28,

U.S.C., provides as follows with regard to exhaustion of state court remedies:

. . .

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –

7

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented. . . .

28 U.S.C. § 2254(b), (c).  Exhaustion of available and adequate state court remedies thus is generally a prerequisite to a § 2254 habeas corpus application in federal court, "thereby giving the State the ""opportunity to pass upon and correct' alleged violations of its prisoners' federal rights.'"" Baldwin v. Reese, 541 U.S. 27, 29 (2004) (quoting Duncan v. Henry, 513 U.S. 364, 365 (1995), Piccard v. Connor, 404 U.S. 270, 275 (1971)).  "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." Id. at 29 (citations omitted).  "Fair presentation of a prisoner's claim to the state courts means that the substance of the claim must be raised there.  The prisoner's allegations and supporting evidence must offer the state courts a fair opportunity to

8

apply controlling legal principles to the facts bearing upon his constitutional claim."

Patton v. Mullin, 425 F.3d 788, 809 n. 7 (10th Cir. 2005), cert. denied, 126 S. Ct. 2327

(2006).  "[O]rdinarily a state prisoner does not 'fairly present' a federal claim to a state

court if that court must read beyond a petition or a brief (or similar document) that does

not alert it to the presence of a federal claim in order to find material, such as a lower

court opinion in the case, that does so."   Baldwin, 541 U.S. at 32.  "If the exhaustion

doctrine is to prevent 'unnecessary conflict between courts equally bound to guard and

protect rights secured by the Constitution,' . . . it is not sufficient merely that the federal

habeas applicant has been through the state courts."   Picard v. Connor, 404 U.S. at

275-76 (citation omitted).

      Generally, when a petitioner fails to exhaust his state court remedies, the federal

court should dismiss the petition without prejudice so that those remedies may be

pursued.  Demarest v. Price, 130 F.3d 922, 939 (10th Cir. 1997).  "However, in

considering unexhausted claims, federal courts should consider whether, upon

dismissal of the claims, the petitioner would then be able to raise them in the state

courts. '[I]f the court to which Petitioner must present his claims in order to meet the

exhaustion requirement would now find those claims procedurally barred, there is a

procedural default for the purposes of federal habeas review.'"  Id. (quoting Dulin v.

Cook, 957 F.2d 758, 759 (10th Cir. 1992), which cites Coleman v. Thompson, 501 U.S.

722, 735 n.1 (1991)).  In addition, a finding of procedural default may also be found

when the federal court has before it an opinion from the state court which "rests on a

state law ground that is independent of the federal question and adequate to support

the judgment." Rodriguez v. Zavaras, 42 F. Supp.2d 1059, 1078-79 (D. Colo. 1999) (quoting Coleman, 501 U.S. at 729). "The doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." Id. at 1079 (quoting Coleman, 501 U.S. at 729-30).

Claims 1,  3, and 4 were not raised by the Petitioner on direct appeal. Petitioner's 35(c) motion has not been submitted to the court.  As asserted by respondents, however, even assuming *arguendo* that as asserted by petitioner he raised these claims in his 35(c) motion, his claims were not ultimately exhausted because he caused his appeal of the 35(c) ruling to be dismissed by responding to the CCA's show cause order with a pleading full of inappropriate language rather than by providing the requested order.

With regard to Claim 2, respondents incorrectly assert that in his Opening Brief in the CCA, the petitioner raised Claim 2, but he did not present it as an issue of federal constitutional law and did not cite any provisions of the U.S. Constitution concerning the purported erroneous grant of a challenge for cause.  A review of the petitioner's Amended Opening Brief shows that in fact his attorney did mention the Sixth Amendment to the United States Constitution in support of this claim.  (See Docket No. 29-2 at 11).  Therefore, petitioner has exhausted this claim.  Nevertheless, as discussed below, this court finds no merit to Claim 2.

As to the petitioner's unexhausted claims, Colorado's procedural rules now bar him from raising new claims related to the criminal conviction at issue here.  Petitioner

10

pursued a direct appeal of his convictions through the CCA, and his petition for

certiorari was denied by the Colorado Supreme Court.  He may not file a second direct

appeal of his conviction, and Colorado's successive petition rule prevents him from

raising new issues in a second Rule 35(c) motion.  See People v. Hubbard, 519 P.2d

945, 948-49 (1974) (successive application rule).  Furthermore, the period of limitations

for a Rule 35(c) motion has expired. See § 16-5-402(1), C.R.S. (period of limitations for

Rule 35(c) motions).

Petitioner could overcome the procedural default if he could demonstrate either

(1) cause for the default and actual prejudice as a result of the alleged violation of

federal law, or (2) that not reaching his claims would result in a fundamental

miscarriage of justice.  Klein v. Neal, 45 F.3d 1395, 1400 (10th Cir. 1995).  To fit within

the narrow exception of suffering a fundamental miscarriage of justice, the petitioner

must "supplement[] his constitutional claim with a colorable showing of factual

innocence."  Id.  "To be credible, such a claim requires petitioner to support his

allegations of constitutional error with new reliable evidence- whether it be exculpatory

scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that

was not presented at trial."  Schlup v. Delo, 513 U.S. 298, 324 (1995).  "[A] substantial

claim that constitutional error has caused the conviction of an innocent person is

extremely rare."  Id.  "[T]he Schlup standard is demanding and permits review only in

the 'extraordinary' case."  House v. Bell, 126 S.Ct. 2064, 2077 (2006).  In this case, the

petitioner has not demonstrated cause for and prejudice from the default or that not

reaching his claims would result in a fundamental miscarriage of justice.   While

11

petitioner protests his innocence, he has not supported this claim with any evidence, let alone newly-discovered evidence.  Instead, he merely speculates and alleges what his purported witness, Mr. Boone,  would testify to if called before the court.  Furthermore, as noted above, one of the trial witnesses, Scot Paulsen, testified about petitioner mentioning a Mr. Boone, so this potential witness is not new evidence of innocence.  In sum, this court finds that the petitioner has made no colorable claim of factual innocence sufficient to fall within the fundamental miscarriage of justice exception to excuse his procedural default.

In sum, petitioner has not exhausted Claims 1, 3, and 4, and he has procedurally defaulted those claims.  Therefore, the merits of those claims have not been discussed below.

## MERITS OF CLAIM 2

"The Antiterrorism and Effective Death Penalty Act of 1996 ["AEDPA"] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).  "Under AEDPA, 'federal habeas review of state convictions is limited when the state courts have adjudicated a claim on the merits.'"  Parker v. Scott, 394 F.3d 1302, 1308 (10th Cir. 2005).

More specifically, 28 U.S.C. § 2254 now provides in pertinent part:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State

12

court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

> (e) (1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(d), (e)(1). With regard to § 2254(d)(1), the U.S. Supreme Court

has stated that

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. . . . A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. . . . The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. . . . The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* [*v. Taylor*, 529 U.S. 362, 409-10 (2000),] that an unreasonable application is different from an incorrect one. . . . See also *id.*, at 411 . . . (a federal habeas court may not issue a writ under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly").

Bell v. Cone, 535 U.S. at 694.

"Avoiding these pitfalls does not require citation of [Supreme Court] cases-

13

indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002). "Furthermore, under § 2254(d)(1), the only 'federal law' [the court] consider[s] is 'clearly established federal law as determined by decisions, not dicta, of the Supreme Court.' . . . Thus, 'an absolute prerequisite for [a habeas petitioner's] claim is that the asserted constitutional right on which it rests derive in clear fashion from Supreme Court precedent.'" Parker v. Scott, 394 F.3d at 1308 (citations omitted).

With the above standards in mind, this court will review the petitioner's second claim.  In his Amended Opening Brief on direct appeal, the petitioner, through counsel, asserted that the trial court abused its discretion when it granted the prosecution's challenge for cause to a prospective juror, Hersch, who had not evidenced a clear bias or enmity against the prosecution.  Petitioner noted that during jury selection, he objected to the State's challenge for cause to Hersch, who had a previous conviction for driving while impaired and had been prosecuted by the Fremont County District Attorney's Office.  Petitioner noted that the State's challenge was based on the following questions and the juror's responses:

> MS. EBERLING: Okay.  Do you think that having been prosecuted, it would cause you to tend to side with Mr. Price against me.
>
> MR. HERSCH: It might a little bit.
>
> MS. EBERLING: Okay.  Because you've sat in his position, in one sense of the word?
>
> MR. HERSCH: Yeah.

MS. EBERLING: Okay.  And as the judge told all of us when we got
started here, the purpose of this interchange is to determine whether or
not you can be fair.  Do you think you won't be fair to my side of the case?

MR. HERSCH: No.

MR. HERSCH: That was a badly worded question.  Can you be fair or not.

MR. HERSCH: Not totally, I don't think.

MS. EBERLING: Okay.  And you would harbor some resentment against
my side of the case?

MR. HERSCH: Yeah.

MS. EBERLING: Okay.  Thanks for your candor.  I'd challenge Mr. Hersch
for cause.

(Docket No. 29-2 at 10-11).  Petitioner, through counsel, further asserted:

In this case, the trial court granted the State's challenge for cause
notwithstanding Juror Hersch's initial representation that he would <u>not</u> be
biased against the State in deciding the case. . . .  Only when he was
pressed by the prosecutor did the juror qualify his opinion, but even then,
stated that he "might" side with the defendant "a little bit." . . .  Juror
Hersch then added that he did not think that he would be totally fair to the
State, and responded affirmatively when asked if he would harbor some
resentment toward the State. . . .

However, all of these remarks were preceded by Juror Hersch's
observation that, when he was prosecuted for his traffic offense, he was
treated fairly by the State and that he had received a plea bargain in the
case that he considered "a pretty good deal," since it was his second
offense. . . .  Moreover, all of Mr. Hersch's responses during voir dire
were overshadowed by his belief that a thief should be held accountable
for his
actions under all circumstances. . . .  Finally, when the trial court
conducted its initial inquiry of the panel, it asked whether any of the
"juror[s] has a state of mind which shows enmity or bias or prejudice
toward the defendant or the State."  The record reflects that the court then
asked for a show of hands to establish whether any of the potential jurors
would answer this question affirmatively, but received no response. . . .

15

The only conclusion that can be reached from Juror Hersch's responses is that he would have been a fair and impartial juror in the case, and that any empathy he might feel for the defense was well tempered by his belief that if the evidence proved Mr. Price committed a crime, he should be held accountable for his actions. . . .  Had Mr. Price's objection to the State's challenge for cause been sustained, the composition of the jury would have been different.  An appellate court cannot speculate as to what effect this might have had on the trial's outcome. . . .

It is apparent that based on the responses given by the prospective juror, that the trial court abused its discretion in granting the State's challenge for cause.  Accordingly, Mr. Price's convictions must be reversed and the case remanded for a new trial.

(Docket No. 29-2 at 13-14) (citations omitted).

The State noted in its Answer Brief to the CCA that "[t]he judge ruled that he would allow the challenge for cause because he believed that Mr. Hersch was being honest when he said he would have difficulty being fair."  (Docket No. 29-3 at 11).

The CCA found the following with respect to this claim:

Defendant first contends that the trial court erred when it granted the prosecution's challenge for cause to one of the prospective jurors. We disagree.

To ensure that the jury in a criminal case is impartial, the trial court must excuse prejudiced or biased persons.  Section 16-10-103(1)(j), C.R.S. (1986 Repl. Vol. 8).  The test for determining whether a prospective juror should be disqualified is whether that person will render a fair and impartial verdict based on the evidence presented at trial and the instructions given by the court.  People v. Drake, 748 P.2d 1237 (Colo. 1988).  If there is sufficient reason to question the impartiality of a juror, the trial court should grant a challenge for cause and dismiss a juror.  People v. Sandoval, 733 P.2d 319 (Colo. 1987).

Here, the prospective juror stated that he had been prosecuted twice by the same district attorney's office and convicted for driving while impaired.  The juror conceded that his experience might cause him to side with the defendant and admitted that he would have difficulty being fair

16

> because he harbored some resentment against the prosecution.  The
> prosecutor successfully challenged the juror for cause over defendant's
> objection.
>
> So long as there is reason to believe that a prospective juror's
> views would prevent or substantially impair the performance of his duties
> as a juror, we may not overturn a trial court's decision to grant a challenge
> for cause absent an abuse of discretion.  <u>See</u> <u>People v. Macrander</u>, 828
> P.2d 234 (Colo. 1992).  We find no such abuse here.

(Docket No. 29-4 at 3-4).

"In essence, the right to jury trial guarantees to the criminally accused a fair trial

by a panel of impartial, 'indifferent' jurors.  The failure to accord an accused a fair

hearing violates even the minimal standards of due process."  <u>Irvin v. Dowd</u>, 366 U.S.

717, 722 (1961).  "[J]urors are sufficiently impartial under constitutional standards if

they can lay aside any preconceived opinions regarding the outcome of the case and

'render a verdict based on the evidence presented in court.'"  <u>Goss v. Nelson</u>, 439 F.3d

621, 627 (10th Cir. 2006) (citation omitted).  "A state trial court's finding regarding the

impartiality of particular jurors is a question of fact. . . .  Only when a manifest error

occurs can a federal habeas court overturn a state court's finding regarding jury

impartiality as a whole. . . .  Accordingly, [the] court independently evaluates testimony

with respect to bias to decide whether the state court committed manifest error by

holding the jury was sufficiently impartial."  <u>Id.</u> (citing <u>Patton v. Yount</u>, 467 U.S. 1025,

1036, 1037 n.12 (1984)).  State court factual findings are presumptively correct, and

petitioner bears the burden of rebutting that presumption by clear and convincing

evidence. 28 U.S.C. § 2254(e)(1); <u>Saiz v. Ortiz</u>, 392 F.3d 1166, 1175 (10th Cir. 2004),

<u>cert. denied</u>, 545 U.S. 1146 (2005).

17

Here, the court finds that the state court did not commit manifest error.  The prospective juror acknowledged that he had been twice prosecuted by the prosecution's office, and he specifically stated that he did not think he could be totally fair and that he would harbor some resentment against the prosecution.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody (Docket Nos. 10 and 11) be **DENIED** and **DISMISSED WITH PREJUDICE**.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Fed. R. Civ. P. 72(b), Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.  Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated:　　　February 26, 2007　　　s/ Michael J. Watanabe
　　　　　　　Denver, Colorado　　　　Michael J. Watanabe
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge